## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jamie M. Carlson, | Civil No. 11-1480 (DWF/SER) |
| Petitioner, | |
| v. | **REPORT and RECOMMENDATION** |
| Bruce Reiser, Warden, | |
| Respondent. | |

Jamie M. Carlson, *pro se*, #136236, Minnesota Correctional Facility – Rush City, 7600 525th Street, Rush City, MN 55069.

Matthew D. Greenley, Esq., Clay County Attorney's Office, 807 11th Street North, Moorhead, MN 56560, for Respondent.

STEVEN E. RAU, United States Magistrate Judge

Petitioner Jamie M. Carlson, currently a state inmate at the Minnesota Correctional Facility at Rush City, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1]. Carlson originally alleged two grounds for relief: ineffective assistance of trial counsel and violations of his due process rights. In his Reply to State's Answer to Petition for Writ of Habeas Corpus, however, Carlson "waived" his due process claim. [Doc. No. 17, at 17]. Respondent Bruce Reiser filed a response to the Petition arguing that the state courts' resolution of Carlson's ineffective assistance claim was not contrary to or an unreasonable application of federal law. The matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition be denied and the action dismissed.

1

I.  BACKGROUND

A jury convicted Carlson of selling three or more grams of methamphetamine in violation of Minn. Stat. § 152.022.[1] The state introduced evidence at trial that Carlson sold methamphetamine to a confidential informant in a controlled buy on August 7, 2006. The state's evidence included recordings of post-buy conversations between Carlson and two informants which tended to confirm the August 7 transaction. Neither party used a recording of the August 7 transaction at trial.

The Minnesota Court of Appeals affirmed Carlson's conviction. *State v. Carlson*, No. 08-0126, 2009 WL 1311324, *2 (Minn. Ct. App. July 22, 2009) ("*Carlson I*"). Carlson's Petition for Further Review was denied.

Carlson then filed a *pro se* petition for postconviction relief that alleged, among other things, ineffective assistance of trial counsel. *Carlson v. State*, No. A10-978, 2011 WL 500055, *1 (Minn. Ct. App. Feb. 15, 2011) ("*Carlson II*"). Without an evidentiary hearing, the state district court denied Carlson's petition and concluded that *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) barred his ineffective assistance of trial counsel claim. *Carlson II*, 2011 WL 500055, at *2. The court reviewed Carlson's claims for ineffective assistance of appellate counsel and for newly discovered evidence, holding that Carlson failed to provide sufficient fact-based allegations that, if proven, would entitle him to relief. *Id.*

Carlson appealed the decision to the Minnesota Court of Appeals and argued his claim of ineffective assistance of trial counsel fell within the exception to *Knaffla* permitting claims when fairness requires and where the petitioner did not deliberately and inexcusably fail to raise the

---

[1] The facts and procedural history are taken from the Minnesota Court of Appeals' decision on Carlson's direct appeal, *Minn. v. Carlson*, No. A08-0126 (Minn. Ct. App. May 12, 2009) (unpublished), and his appeal on his petition for postconviction relief, *Carlson v. State*, No. A10-978, 2011 WL 500055 (Minn. Ct. App. Feb. 15, 2011).

issue on direct appeal. *Id.* Carlson provided the appellate court evidence that he expressed his unhappiness with his trial counsel to his appellate counsel, but that appellate counsel suggested that an ineffective assistance claim would be difficult to establish and that "ineffective-assistance claims were usually made in postconviction actions after a direct appeal." *Id.* The Minnesota Court of Appeals concluded that *Knaffla* did not bar Carlson's ineffective assistance of trial counsel claim. *Id.* at 3. The Minnesota Court of Appeals then reviewed Carlson's ineffective assistance of trial counsel claim and determined "the record conclusively shows that [Carlson] was not entitled to relief." *Id.* The court held that Carlson's counsel's decision not to introduce certain evidence to impeach witnesses was a matter of trial strategy and not the proper subject of an ineffective assistance claim. *Id.* The court also affirmed the denial of an evidentiary hearing on the issue. *Id.* The Minnesota Supreme Court denied review. Carlson filed the instant habeas Petition on June 6, 2011.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of 28 U.S.C.) ("AEDPA") prescribes the standards that govern this Court's substantive review of Carlson's habeas petition. The relevant portion of AEDPA provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 405-11 (2000), the United States Supreme Court discussed the meaning of the AEDPA and how federal district courts should apply it. State court decisions are "contrary to" Supreme Court precedent under § 2254(d) when the state court: (1) reaches a conclusion opposite to the Supreme Court on a question of law; or (2) arrives at a result opposite to Supreme Court precedent involving "materially indistinguishable" facts. *Id*. at 405. The "unreasonable application" clause of § 2254(d)(1) provides that even if the state court correctly identifies the relevant Supreme Court principle, a federal court may grant a prisoner's writ if the state court applied the principle unreasonably to the facts of the case. *Id.* at 413. The standard for determining whether a state court's decision is an "unreasonable application," is "whether the state court's application of clearly established federal law was **objectively unreasonable**. . . ." *Id.* at 409 (emphasis added). A writ may not be issued simply because the federal court concludes the state court's application of federal law was erroneous or incorrect, but only where the state court's decision was also unreasonable. *Id.* at 411.

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Habeas relief can, therefore, be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct," and such a presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted in *Williams*.

Under the AEDPA, evidentiary hearings are only held under extremely limited circumstances when a factual basis giving rise to the habeas claim was not developed in state court. 28 U.S.C. § 2254(e)(2); *Cole v. Roper*, 623 F.3d 1183, 1192 (8th Cir. 2010). A court may not hold an evidentiary hearing in a § 2254 case if the petitioner failed, through lack of diligence, to develop the factual basis for his habeas claims during the underlying state-court proceedings. *Shepersky v. Wengler*, No. 09–2049, 2011 WL 1189099, at *1 (D. Minn. March 28, 2011) (citing *Williams*, 529 U.S. at 432; *Williams v. Norris*, 576 F.3d 850, 860 (8th Cir. 2009)). Even when § 2254(e)(2) does not bar an evidentiary hearing, the decision whether to grant an evidentiary hearing is discretionary. *Id.* (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). When the dispute can be resolved on the basis of the record, no evidentiary hearing is required. *Wallace v. Lockhart*, 701 F.2d 719, 729 (8th Cir. 1983); *see also Johnston v. Luebbers*, 288 F.3d 1048, 1059 (8th Cir. 2002).

### III.   DISCUSSION

Carlson claims that his trial attorney failed to provide effective assistance of counsel. Specifically, Carlson alleges his trial counsel was ineffective in failing to use: 1) evidence of an audio recording of one of the drug transactions made by an informant that included statements made by witness Jamie Cole; 2) an audio recording of a drug transaction made by Shelly Shipp that included statements made by Carlson, and 3) two supplemental police reports of the

surveillance officer, Detective Charles Anderson.[2] Carlson contends that his trial counsel should have used this evidence to impeach these witnesses. Respondent asserts that trial strategy decisions about what evidence to use do not give rise to ineffective assistance of counsel claims.

Pursuant to *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), to establish ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel was deficient and (2) the deficiency prejudiced the petitioner's case. A petitioner must demonstrate both prongs of the *Strickland* test to be entitled to relief; if either prong is unproven, the reviewing court need not analyze the other prong. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

First, the petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Under this prong, petitioner must show that counsel's representation was objectively unreasonable. *Stacey v. Solem*, 801 F.2d 1048, 1051 (8th Cir. 1986); *see also Theus v. United States*, 611 F.3d 441, 446–47 (8th Cir. 2010) (analyzing § 2255 petition). "To establish a claim for ineffective assistance of counsel, a defendant faces a heavy burden . . . Judicial scrutiny of counsel's performance must be highly deferential." *United States v. Williams*, No. 09-3473, 2011 WL 5117914, at *2 (D. Minn. Oct. 26, 2011) (internal citations omitted). "Matters of trial strategy and tactics generally do not constitute ineffective assistance of counsel, unless a tactical choice is wholly without reason." *Williams-Bey v. Trickey*, 894 F.2d 314, 316 (8th Cir. 1990).

To satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding

---

[2] In his postconviction relief proceeding, Carlson also challenged certain statements his trial counsel made in closing arguments. In his current petition, however, Carlson seems to have abandoned this argument.

would have been different." *Strickland*, 466 U.S. at 694. "[I]t is not sufficient for a defendant to show that the error had some 'conceivable effect' on the result of the proceeding . . ." *Id.*

In the context of § 2254 ineffective assistance of counsel claims, the Supreme Court stated:

> [t]he question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, U.S. 556 U.S. 111, 123 (2009) (internal citations omitted).

Under this deferential standard, Carlson's ineffective assistance claim fails. The Minnesota Court of Appeals followed *Strickland* and properly rejected Carlson's claim because "decisions on what evidence to present are matters of trial strategy, which are not properly the subject of an ineffective-assistance claim." *Carlson II*, 2011 WL 500055, at *3. Carlson admitted that his counsel's decision not to use the audio recordings at trial was trial strategy. Carlson stated at trial, "I would like certain tapes . . . but if there are tapes that the prosecution is not using and my lawyer doesn't want to use it, I think should be used . . . I disagree with my lawyer, even though it's his trial strategy." (Volume II Trial Tr. dated October 17, 2007, at 171, "Trial Tr. II."). Carlson's lawyer told the Court he did not want to use the audio recordings because "they are much more damaging than they are helpful." (*Id.*). The fact that counsel was willing to use the audio recordings if Carlson "insist[ed]" does not negate the fact that counsel's choices in presenting evidence is a matter of discretionary trial tactics. Given counsel's belief that the recordings were "damaging" it was reasonable for him to refrain from using them.[3]

---

[3] Counsel may have been referring to statements on the 8-7-06 recording implicating Carlson, which include: 1) Cole telling Shipp and the confidential informant that he went to

Pursuant to the Court's Order Dated December 6, 2011 [Doc. No. 18], Petitioner supplemented the administrative record with the following items: 1) four audio recordings (recordings from 8-7-06, and Clay County District Court trial Exhibits 9, 10, and 11); 2) Jamie M. Carlson's Clay County District Court Petition for Post-Conviction Relief dated January 5, 2010; 3) Jamie M. Carlson's Clay County District Court Brief in Support of Post-Conviction Relief, dated January 5, 2010; 4) Jamie M. Carlson's Amendment to Clay County District Court Post-Conviction Petition, dated February 3, 2010; 5) Exhibits attached to Post-Conviction Brief; 6) List of trial exhibits in Clay County District Court 14-K8-06-2660; 7) Clay County District Court trial exhibits 3-8, 9A, 10A, 11A, 12-18 for case number 14-K8-06-2660; 8) Clay County District Court trial transcript from 14-K8-06-2660, pages 287-450. (Placeholder for Supp. Administrative R.) [Doc. No. 19]. The Court carefully reviewed these supplements to the administrative record and found nothing to substantiate Petitioner's claim of ineffective assistance of trial counsel.

This Court also reviewed the transcript of trial counsel's cross-examination of Cole. Counsel impeached Cole on many other issues, including: 1) his methamphetamine use; 2) his felony criminal record including assault and drug convictions; 3) his incentive to cooperate with police to receive favorable treatment on the charges he faced; and 4) a personal grudge he potentially held against Carlson. (Trial Tr. II at 184-89, 192-95). Carlson has not satisfied the prejudice prong of *Strickland.* Because the jury already had other reasons to disbelieve Cole's testimony, counsel's decision not to use the 8-7-06 recording to impeach Cole on the location of

---

Carlson's home to get the drugs and that a named detective was questioning Carlson at his residence; and 2) Shipp's statement that she met Carlson outside to get the rest of the drugs from him for which the confidential informant had paid. Carlson may also have been referring to the 8-31-06 recording in which Carlson discusses the purchase of methamphetamines.

the buy was inconsequential. The Minnesota Court of Appeals' conclusion that Carlson did not satisfy the *Strickland* standard for ineffective assistance of counsel was not unreasonable.

Carlson further asserts that defense counsel should have used the 8-31-06 recording of Shipp and Carlson to impeach Shipp. This Court reviewed the transcript of trial counsel's cross-examination of Shipp, revealing that counsel impeached Shipp on many issues, including: 1) lying about her drug use; 2) her incentive to cooperate with police to receive favorable treatment on the charges she faced; and 3) and the location of the conversation she had with Carlson. (Trial Tr. II at 108-121). Carlson has not satisfied the prejudice prong of *Strickland*. Defense counsel's decision not to impeach Shipp on the location of the conversation between Shipp and Carlson is inconsequential because the jury already had other reasons to disbelieve her testimony. The Minnesota Court of Appeals' conclusion that Carlson did not satisfy the *Strickland* standard for ineffective assistance of counsel was not unreasonable.

It also was not unreasonable for the Minnesota Court of Appeals to conclude that trial counsel's failure to use the two police reports did not constitute ineffective assistance of counsel. Carlson alleges that the police reports should have been used for impeachment purposes because they showed that, during the controlled buy, Detective Anderson was in a different location than he testified to at trial and his testimony included details of the incident that do not appear in the police reports.

With respect to the August 7 report, Carlson does not seem to argue that Detective Anderson's testimony was inconsistent with his report. (Suppl. Rpt. dated August 7, 2006, ICR #06-2392/715-1). Rather, he repeatedly alleges that the report "does not mention" certain details about the incident that Anderson testified about at trial. The report, while less detailed, does not contradict Anderson's testimony. As to the potential discrepancy about Anderson's location

9

during the surveillance, the significance of this detail is mitigated by the fact that Anderson's testimony at trial was more vague than his report and that he testified he drove around during the surveillance.

With respect to the August 23 report, Carlson only alleges that this report is the first time that Carlson's name is mentioned, but not why this report was necessary for the cross-examination of Anderson. (Suppl. Rpt. dated August 23, 2006, ICR #06-2392/715-2). The record reveals that counsel cross-examined Anderson extensively about what he observed about the drug transaction, his ability to view the events at issue from his surveillance location, and his lack of first-hand information about some details the informant told him. (Trial Tr. II at 263-66, 269-70, 273-74). Under these circumstances, trial counsel's decision not to use the police reports for impeachment purposes can be viewed as a reasonable trial strategy and there is no evidence that counsel's failure to use the police reports prejudiced Carlson. As to counsel's failure to use the police reports, the Minnesota Court of Appeals did not render a decision that was contrary to or involved an unreasonable application of *Strickland*. Carlson's Petition should, therefore, be denied.

### IV.     Evidentiary Hearing

In his Petition, Carlson requested an evidentiary hearing evidence supporting his assertion that he "did not receive a fair trial and that but for trial counsel's mistakes, the outcome would have been different." (Pet. at 15). An evidentiary hearing in a habeas corpus proceeding is appropriate only where the facts are in dispute. *See Toney v. Gammon,* 79 F.3d 693, 697 (8th Cir. 1996). Because Carlson has not alleged any specific factual disputes that if resolved in his favor would justify relief, an evidentiary hearing is unnecessary. *See Shelton v. Ciccone*, 578

F.2d 1241, 1245 (8th Cir. 1978). Accordingly, Carlson's request for an evidentiary hearing is denied.

V.     **Certificate of Appealability**

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Carlson's claims any differently than they have been decided here. Carlson has not identified, (and the Court cannot independently discern), anything novel, noteworthy or worrisome about this case that warrants appellate review. Carlson should **not** be granted a COA in this matter.

VI.    **RECOMMENDATION**

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Carlson's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] be **DENIED** and **THIS ACTION BE DISMISSED WITH PREJUDICE**; and

2. Carlson **NOT** be granted a Certificate of Appealability.

Dated:  January 31, 2012

                                              s/ Steven E. Rau
                                              STEVEN E. RAU
                                              United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 14, 2012,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.